JOHN H. WEBBER *et al.*

*v.*

JACOB E. BROWN.

1. INSTRUCTIONS—*should not be misleading.* An instruction may be abstractly correct in view of the rights of certain persons, yet if it have a tendency to mislead the jury in reference to the rights of the immediate parties to the suit, it will be erroneous.

2. So, upon the trial of the right of property in a lot of wheat, between a creditor of A, and one B, who claimed the property as having been raised on his own land by his tenant, to whom the land had been rented by A, as agent of B, the court instructed the jury, for the claimant, that if A rented the land in question to third parties, and as agent of B, and the wheat in question was raised by virtue of said renting, and belonged to B, then they must find for the claimant. It was held, that although the instruction would have been unobjectionable as between the parties to the lease, yet it was erroneous as between the parties to this proceeding, because of its tendency to mislead the jury by giving them the impression that the renting

of the land by A, in the name of B, settled the question of the title to the rent wheat, when the creditor claimed the land was A's.

. 3. RIGHT OF PROPERTY—*the claim may be made by an agent.* Making the claim to property which has been levied upon, is merely an act *in pais*, and may be performed by an ordinary agent. Such an act is not embraced in the rule laid down in *Robb* v. *Smith*, 3 Scam. 47, that a person can not commence or prosecute a suit as "agent" for another, but only as an attorney at law.

WRIT OF ERROR to the Circuit Court of Livingston County; the Hon. CHARLES R. STARR, Judge, presiding.

The case is sufficiently stated in the opinion of the Court.

Messrs. WOOD and LONG, for the plaintiffs in error.

Messrs. HARDING and PAYSON, for the defendant in error.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was a trial of the right of property, which had been levied on by virtue of an execution in favor of Webber, against one Thomas Y. Brown, and which was claimed by his son, Jacob E. Brown. The property in question was a parcel of wheat raised in the year 1863, on a piece of land claimed by said Jacob E. Brown, and, when levied on, was in a granary on the farm, a part of it being the landlord's share of a crop raised by tenants.

The evidence showed that the land had been bought in 1855, of the Illinois Central Railroad Company, by Thomas Y. Brown, the defendant in the execution, and the Secretary of the Land Department of the Company testified that all the purchase money had been paid, but no deed had ever been made, and the Company had no knowledge that the contract had ever been assigned. The evidence further shows that the defendant in the execution moved on to the land seven or eight years before the commencement of the suit, and with his family had ever since occupied it up to the time of the trial— that his son, the claimant of the wheat, had lived with his

father from the time the latter moved on to the land until the son went into the army in 1862, and that the son was, at the time of the trial, about twenty-five years old, and unmarried.

The only evidence upon which the claim of the son to the property was based, was that the father, professing to act as agent for the son, had rented the land, upon which a part of the wheat was raised, to the tenant who raised it, in the son's name. The witness, on cross-examination, further testified that in the spring of 1860 he was called to witness a contract between the father and the son—that the contract was not in writing, and was as follows:

"Thomas Y. Brown told Jacob E. Brown, that he had lost all he had, and expected that he would be obliged to give up the land to the Railroad Company; and that he wanted to give up the premises to Jacob E. Brown; and all that was raised on the premises, over and above the support of the family, was to go to Jacob E. Brown." The witness further testified that he had worked the land since 1859 in the son's name. There was no evidence that any consideration had ever been paid by the son to the father, or that he was able to pay any, or that the contract with the Railroad Company had ever been assigned to the son, or that any contract, either written or verbal, had ever been made between them, since what the witness calls a contract manifestly is none. This is so plain an attempt to place property beyond the reach of creditors, that it needs no comment beyond the naked statement of the facts.

If the case should be again tried, the third instruction, which was as follows, should not be given:

3. "If the jury believe, from the evidence, that Thomas Y. Brown rented the land in question to third parties, and as the agent of Jacob E. Brown, and the wheat in question was raised by virtue of said renting, and belonged to said Jacob E. Brown, then the jury will find for the claimant."

As between the parties to the lease, the instruction would not have been objectionable; but in this suit it would tend to mislead the jury, by giving them the impression that the rent-

7—38TH ILL.

ing of the land by Thomas Y. Brown in the name of his son, settled the question of the title to the rent wheat. It was of but little importance in whose name the land was rented.

The point made by counsel for the plaintiff in error, that the claim to this property could not be made by Thomas Y. Brown as agent for his son, but should have been made by the claimant in person, or by an attorney at law, is not well taken. The case of *Hitt* v. *Smith*, 3 Scam. 47, does not apply. The court there held that a suit in a court of record must be commenced by the party in his proper person, or by an attorney at law, and that he could not prosecute by an agent. The making claim to this property, however, was merely an act *in pais*, and might be performed by an ordinary agent.

Because the verdict was against the evidence, and the third instruction for the claimant wrong, the judgment of the Circuit Court is reversed, and the cause remanded.